### IN THE UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF ILLINOIS
### URBANA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 07-cr-40065 |
| | ) | |
| WILLIAM HENRY VANDEWOESTYNE, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER AND OPINION

This matter is now before the Court on Defendant VanDeWoestyne's Motion for Compassionate Release (Doc. 25), his attorney's Amended Motion (Doc. 31), and the Government's Response (Doc. 32). For the reasons set forth below, Defendant's Motion is DENIED.

### BACKGROUND

On May 22, 2008, this Court sentenced Defendant to a 240-months term of imprisonment followed by a 5-year term of supervised release for Malicious Arson Resulting in Death, in violation of 18 U.S.C. § 844(i). Defendant has been in custody since March 23, 2007 and is currently serving his sentence in FMC Rochester in Rochester, Minnesota. The parties agree that Defendant's projected release date is April 6, 2024.

The presentence investigation report indicates that on March 3, 2007, Defendant dismantled the gas line to a water heater in a condominium he was renting in Moline, Illinois which caused natural gas to flow into his unit. (Doc. 20 at 5). This was an attempt to commit suicide by asphyxiation and was apparently not his first suicide attempt. (*Id*. at 21). The natural gas ultimately ignited and caused an explosion and fire. Defendant had severe burns but survived. Three other

1

residents of the condominium died. Other residents lost property, were without a place to live, and suffered mental and emotional trauma from the experience.

Defendant admits that he had a substance abuse problem at the time. His criminal history also includes a conviction for unlawful possession of cocaine and three separate convictions for driving under the influence. (*Id*. at 14–15).

On October 23, 2020, Defendant filed a *pro se* Motion for Compassionate Release. (Doc. 25). The Court appointed the Federal Public Defender's Office to represent him, and on October 28, 2020, appointed counsel filed an Amended Motion. (Doc. 31). On November 11, 2020, the Government filed its Response in opposition to compassionate release. (Doc. 31). This Order follows.

## LEGAL STANDARD

Before filing a motion for compassionate release, a defendant is required to first request that the BOP file a motion on his behalf. 18 U.S.C. § 3582(c)(1)(A). A court may grant a motion only if it was filed "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or after 30 days have passed "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id*.

The compassionate release statute directs the Court to make three considerations: (1) whether extraordinary and compelling reasons warrant a sentence reduction; (2) whether a reduction is consistent with the factors listed in 18 U.S.C. § 3553(a); and (3) whether a reduction would be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1). The Sentencing Commission, however, has not updated its policy statements since the First Step Act came into effect. Prior to the passage of the First Step Act, federal judges

were only able to release prisoners for compassionate release reasons upon motion by the BOP. *United States v. Gunn*, ---F.3d----, 2020 WL 6813995, at *1 (7th Cir. Nov. 20, 2020). The First Step Act gave judges the power to grant compassionate release on a prisoner's own motion provided that the prisoner first allowed the BOP to review the request and make a recommendation or thirty days had passed since the prisoner submitted his or her request to the BOP. *Id*. The Seventh Circuit determined that the most recent policy statements from the Sentencing Commission do not apply to prisoner-initiated motions because the guidelines only address those motions that were brought pursuant to a BOP motion. *Id*. at 2. Accordingly, the Seventh Circuit held that "because the Guidelines Manual lacks an applicable policy statement, the trailing paragraph of § 3582(c)(1)(A) does not curtail a district judge's discretion. Any decision is 'consistent with' a nonexistent policy statement." *Id*. This Court is therefore not bound by the Sentencing Commission's analysis in § 1B1.13 or the application notes regarding the definition of "extraordinary and compelling release." *Id*.

Despite the Seventh Circuit clarifying that courts are not bound by the Sentencing Commission's guidelines regarding compassionate release when an inmate brings the motion, the Seventh Circuit strongly suggested that those guidelines are still relevant to district courts' decisions. The Seventh Circuit explained that the guidelines analysis provides a "working definition of 'extraordinary and compelling reasons'" and cautioned that a judge who "strikes off on a different path risks an appellate holding that judicial discretion has been abused." *Id*. "In this way the Commission's analysis can guide discretion without being conclusive." *Id*. The Seventh Circuit further stated that it would "expect" district judges to give the BOP Director's analysis regarding the prisoner's request "substantial weight, even though under the First Step Act the Director's views are not controlling." *Id*. Based on the available guidance from the Seventh Circuit,

this Court will give great weight to the Sentencing Guidelines regarding motions for compassionate release even though they are not binding in this case.

If an inmate has a chronic medical condition that has been identified by the CDC as elevating the inmate's risk of becoming seriously ill from COVID-19, that condition may satisfy the standard of "extraordinary and compelling reasons." A chronic condition (i.e., one "from which [the defendant] is not expected to recover" reasonably may be found to be "serious" and to "substantially diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility," even if that condition would not have constituted an "extraordinary and compelling reason" absent the risk of COVID-19. USSG § 1B1.13, cmt. n.1 (A)(ii)(1).

"The mere presence of COVID-19 in a particular prison cannot justify compassionate release—if it could, every inmate in that prison could obtain release." *See, e.g., United States v. Melgarejo*, 2020 WL 2395982, at *5 (C.D. Ill. May 12, 2020). Rather, "a prisoner [may] satisfy the extraordinary and compelling reasons requirement by showing that his particular institution is facing a serious outbreak of COVID-19 infections, the institution is unable to successfully contain the outbreak, and his health condition places him at significant risk of complications should he contract the virus." *Id*. at 5–6.

Finally, this Court is disinclined to grant a sentence reduction unless it determines that a defendant "is not a danger to the safety of any other person or to the community." *See* USSG § 1B1.13(2).

### DISCUSSION

Defendant urges the Court to find extraordinary and compelling reasons exist for his compassionate release based upon the risks he faces due to the coronavirus and the steps that he has taken to rehabilitate himself and plan for his post-incarceration transition. The parties agree

that Defendant exhausted his BOP administrative remedies, and the Government focuses its response on the merits of Defendant's claims.

### A. Eligibility for compassionate release related to Defendant's health.

Defendant cites a number of health problems in support of his motion, including hypertension, heart disease, urinary problems, esophageal reflux, disease of the pericardium, diverticulosis, and colon polyps. The Government agrees that Defendant has a heart condition—coronary artery disease—that can qualify an individual for release due to the risks presented by COVID-19. (Doc. 32 at 14). However, the Government opposes Defendant's proposal that he be released to a group residence maintained by Next Chapter Ministries in Rochester, Minnesota. The Government states that considering the precautions the BOP has taken to reduce the spread of COVID-19, such a living situation would not meet the goal of avoiding COVID-19 exposure. The Government argues that the group home, with nine potential residents and an administrator, could be an increased risk for COVID-19 given that the residents will likely be going into the community on a regular basis. FMC Rochester, the Government argues, is more closely monitoring the disease and generally preventing its transmission. The Government supported this assertion by pointing to the fact that there were only three cases active COVID-19 cases among inmates at FMC Rochester. However, the BOP now reports that there are eighty-eight active cases among inmates and three active cases among staff members. (https://www.bop.gov/coronavirus/ last visited on 12/22/2020). In light of the recent spread of cases, the Government's arguments on this point are less persuasive.

### B. The Court is unable to conclude that Defendant would not be a danger to his community.

However, Defendant has not demonstrated that he would not be a danger to his community. Before releasing a defendant, the Court gives great weight to whether a defendant is a danger to the community. *See* U.S.S.G § 1B1.13.

Defendant argues that he has served more than 13 years of his 240-month sentence and has taken extraordinary steps to rehabilitate himself. Defendant notes that he earned a Journey Worker Electrician's License, which takes over 8,000 hours to complete. The local union has expressed an interest in hiring him when he is released. Defendant also notes that he has been baptized and confirmed to the Catholic faith, and in his *pro se* motion, he included several letters from mentors from his involvement in church in prison. (Doc. 25 at 4–6). Probation confirmed that Defendant has not had any disciplinary infractions while incarcerated. (Doc. 28 at 1).

The Government argues that Defendant's crime was serious and even though he was attempting to take his own life, the danger of releasing natural gas into the building was clear. Accordingly, the Government argues that he behaved without regard for the lives or property of others. (Doc. 32 at 17). The Government further argues that Defendant has a lengthy history of substance abuse and mental illness. *Id*. Despite the BOP classifying Defendant as having a low risk to recidivate, the Government argues that Defendant has not taken the multiple opportunities outside of custody to turn his life. *Id*. The Government further asserts that Defendant has only served 65% of his sentence when the parties agreed that 240-months was the appropriate sentence.

Defendant has some concerning health conditions and the numbers of COVID-19 cases at his facility appear to have sharply risen in just a few weeks. However, such a significant reduction of Defendant's sentence would not reflect the seriousness of the crime committed. While BOP rated Defendant as having a low risk of recidivism, Defendant's behavior outside of prison includes multiple DUIs and this failed suicide attempt that resulted in his neighbors losing their lives. His history reflects that he has struggled with various addictions that have resulted in him behaving with a lack of regard for the safety of others. In keeping with the goals of sentencing and

this Court's focus on the safety of the general public, this Court is unable to grant Defendant the relief that he seeks at this time.

## CONCLUSION

For the reasons set forth above, it is ORDERED that Defendant's Motion [25] and Amended Motion [31] are DENIED.

ENTERED this 22nd day of December, 2020.

>   /s/ Michael M. Mihm
>   Michael M. Mihm
>   United States District Judge